We will hear argument first this morning in Case 23-909, Kousisis v. United States. Mr. Fisher. Mr. Chief Justice, and may it please the Court. The property fraud statutes require a scheme to defraud as understood at the common law. And such traditional fraud requires a scheme, if completed as devised, to harm a traditional property interest. And our position is no such harm occurs if somebody pays money in exchange for something and gets the full economic value of that bargain. The government asks this Court to chart a different path. It argues that a property interest is harmed in a property fraud case whenever somebody gives money pursuant to a fraudulent misrepresentation. That would cause three major problems. First, it would flout decades of this Court's precedent. Indeed, it would allow prosecutions just like McNally, Simonelli, the hypothetical in Skilling, and others that the Court has said are beyond the reach of the fraud statutes. Second, the theory is incompatible with the historical origins of fraud. In an 1893 case that's representative of the time, the Kansas Supreme Court said, even though money is obtained by misrepresentation, if no injury occurs, no crime is committed. That sentence is incomprehensible under the rule the government argues today, which says that any time there's misrepresentation that procures money, that itself is injury. And thirdly, and perhaps most decisively, the government's theory knows no bounds. Every day across the country, people use white lies, puffery, and other fraudulent promises to induce people to enter into transactions. But if there's no harm that occurs in those transactions, there is no fraud. That's what this Court has said time and again in this Court's cases, as the government has tried to concoct one theory after the other to work around that. Such misrepresentations might be a civil violation. They might be a tort violation, a contract violation. They might even be a low-level criminal violation. But the one thing this Court has said time and again is that they do not constitute property fraud, because property fraud requires harm to a property interest, and no such harm occurs in a case like this. I would welcome the Court's questions. Beginning with the facts in this case, give me an example of what would constitute fraud. Well, it would have constituted fraud if we had delivered bridge painting and repair services worth less than we promised. So if we hadn't painted the full bridge, if we'd used products of a less higher quality to deliver the project, that sort of thing, Justice Thomas. So that would be a violation. But here, you don't have anything like that. The government's theory, and this is at JA 96, was that the promise here was non-financial in nature. And what the government argued to the jury is this case is not about dollars and cents. This case is about PennDOT's programmatic interests. And I think in the Court's terms, that means this case is about regulatory interests, and that's what the Court taught in Kelly and other cases, that mere regulatory interests do not supply the basis for property fraud. I'm sorry, Counselor. Let's assume the example that I contract to have a certified plumber fix whatever. All right? And I don't use a certified plumber. I just use a handyman. But the toilet is fixed. Under your theory, even if I didn't use a certified plumber because the toilet was fixed, I got value under the contract? No, I don't think so, Justice Sotomayor. There, the fraud would be promising services that were more valuable. Now, the certified plumber presumably would charge more per hour. But I don't understand what the difference between that in this case is. The services the government contracted for was to have a particular type of vendor sell me something. Well, that's not precisely right. I think what the contract here was with Alpha Construction, and Alpha Construction then got to choose its own subsidiaries. But someone who was certified, someone who had a certain composition. So I think you're right about the word certified in a sense. But the certification in your plumber hypothetical deals with somebody who has greater expertise or experience and therefore charges more. That's how I understand it. If I want someone of a particular quality, when I hire a portrait artist, I want that person. I can get a portrait artist from anybody. Here the government wanted a particular person to provide the service. That's unique, what they wanted. I don't think it's unique in the sense that some of the cases talk about uniqueness, and I'm happy to get to that. But I think, Justice Sotomayor, the key question would be, was the thing that was promised and not delivered more valuable in the marketplace than the thing that was delivered? I always thought the key question was that term material to the transaction. Did I get what I paid for? So there is a materiality requirement, yes, at the end of the statute. I don't think that's exactly the way materiality is analyzed, and neither, the court said, what the materiality test is. Was it important to inducing the person to enter into the transaction? That's what materiality is. What this case is about here is whether you need to have a harm to a property interest. And what our position is, is where you get full economic value of the exchange. And that means not just the end product. Mr. Fisher, what about this uniqueness thing? Let me kind of bring you back. You mentioned to Justice Sotomayor that uniqueness matters. What about your Grover Cleveland example? The one about if you contract for a painting of your grandfather, and you wind up with one, say, of Grover Cleveland? That's not exactly what you wanted, but let's say it's of equal value. So you've suffered no economic loss. So why or would that qualify as an injury? So I think that's the one hard case in the corner of the law. So can I just state the general rule and then go to the exception? Yes. So the general rule would be frustration of subjective economic interests. If they're subjective, it's not enough to trigger the property fraud statutes. Now, I think the one possible exception that might have a foothold in the case law is this uniqueness consideration. And I think the reason why, whether it's a painting, a horse, maybe it's a particular piece of land, is that when you deal with something that is truly one of a kind, economic value there is so subjective in nature that it really doesn't necessarily work so well to say the other thing was of equal value. How do you know if it's so subjective? When you have a one of a kind item. I think the grandfather portrait or a piece of land is often talked about as being unique to another piece of land. Like I wanted that house on that plot of land as opposed to another. That's a special problem in the law. And you find it even beyond the property statutes. Things like specific performance, doctrine, and other things bleed into that. But when you don't have uniqueness, and this does get me back to my question. Mr. Fisher, let me just pause you there. I'm sorry to interrupt. But specific performance, you've referenced that concept. And, yes, and you admit sometimes when I contract for that horse or that painting, I want that thing. Even if you provide me with something of equal value, the injury is satisfied there in traditional fraud law.  I think we all agree on that. Is that right? Well, I think that you don't have to decide that in this case. But we agree that it's generally safe. That is generally true under common law fraud doctrine, right? So if we accept that, why isn't that this case, I think, is where I struggle. Where the contract specifically says, we want DBEs. Now, maybe you should have them. Maybe you shouldn't have them. But that was an essential part of the contract and what was sought. And it wasn't provided. So why isn't that like the horse or the painting or any other specific performance case? Well, I think for the granular example under this contract, remember, the contract itself didn't even, strictly speaking, require DBE subcontractors. It required our clients to make best efforts to procure certain supplies with the income they received from the contract from DBEs. So even under this contract, it's not so much an insistence that you use DBEs in the way you would have in the painting or the horse. But even more generally, I think there's a distinction that runs through the law between something that is truly one of a kind and something that is of a class. Well, horses are of a class. Properties are of a class. Paintings are of a class. It turns on what was contracted for and whether it was specifically sought, a specific item, whether unique or not, whether that was sought. Well, Justice Gorsuch, I think — I want the horse named Charlie. You know, there are 15 other horses in the corral and every bit is good, but I want that one. Well, I think that if you want to follow the common law, the common law did distinguish that. And, of course, you know, even if every answer I give you today isn't satisfying, I would still tell you that what the court has held in neither and other cases is these statutes incorporate the common law, and the common law did draw this line. And so I'll do my best to explain it. All right, one more question. I take your point that there's got to be an injury requirement. There certainly was a common law fraud. But the government says that's not necessary. Materiality will do all the work. What's the problem with that? Well, there's two problems. One is that's just not the way the common law did it. The injury requirement is tied to specific harm to property interest. Materiality is much broader than just harm to a property interest. So you'd have to mangle the materiality requirement to do the work that the traditional property fraud harm requirement does. Now, the government, I think, recognizes that when it looks at the materiality requirement in neither and says, oh, gosh, this is crazy broad. This doesn't do the work we need it to do. So they invent this essence of the bargain test. But even that, for all the reasons we say in our brief, doesn't do the same work that the traditional requirement does. Mr. Fisher, I guess I'm struggling with the idea that there has to be a harm requirement in this context because I don't see it in the statute. And this is a criminal action. This is a criminal case. I would think that Congress was focusing on the harms that arise from the wrongful conduct of the defendant. It names certain elements. These are things that you are prohibited from doing or else you will incur criminal liability. And many of the common law cases that you point to are in the civil context where you would need a harm, obviously, in order to sustain a claim for damages. So can you help me understand where you're coming from with the need to have some sort of other harm in this context? Sure. Let me answer first in terms of the statute itself and then the common law. In terms of the statute itself, the easiest way to understand the case before you today is it's about what the meaning of defraud is. So this is a textual argument we're making about the meaning of defraud. And I'm just making the classic argument that the word brings the old soil with it. It depends on what the old soil is. Let's get to that. So that's where it is in the statute. So then the old soil, as the court itself said in Nieder, both involves civil private fraud like deceit and criminal fraud, false pretenses. So if you look at either of those things, you find the injury requirement. We cite treatise after treatise, case after case. The reason why we look to civil law, if that's part of what's hanging you up, is because historically criminal fraud dealt just with the government. Yes, but what's hanging me up is kind of the facts of this case. Because to the extent that you're talking about what you appear to concede is a material term in an agreement, which is PennDOT says we want contractors who are engaged with subcontractors who qualify as DBEs. And you have these folks, your clients, understanding the materiality of this so much so that they concoct a scheme whereby they misrepresent the extent to which they really are relying on such DBE subcontractors. I don't understand why, given our just classic understanding of fraud being deceit with the object of obtaining money or property, why this doesn't count. You've switched it to – I noted from your introduction that you said a scheme to defraud is a scheme to harm a traditional property interest. I had understood it to be a scheme to obtain a traditional property interest. That all of those cases that you cite, the Simonellis, etc., were about the person's intent to obtain money or property. And I think that is what's going on here. So why don't we just have this sort of classic fraudulent scheme to obtain property under false pretenses in this way? I think there was a lot there. Let me try to break it down into two parts. First, let me explain why it's not classic fraud and then explain the implications if you were to say it's within the statute. So first, the reason why it's not classic fraud is classic fraud does require more than simply obtaining money by misrepresentation. Look at the Kansas Supreme Court's decision in Palmer. Look at the Arkansas Supreme Court's decision in Morgan. Those are both criminal cases, even if you want to stick with just criminal cases. What about this court? Have we ever – we've never interpreted the wire fraud statute? Of course you have. This court, time and again from its earliest days, said this statute involves harm to property. It involves loss to property. Those are the words this court has used both near the enactment of the statute and more recently in cases like Kelly and in Skilling, where the court said the way the statute works is that the defendant's gain – I'm sorry, the defendant's loss mirrors the gain. It's not about the scheme. I've understood that scheme has something to do with it. Scheme does have something to do with it. You have to scheme to obtain the property. Correct. And why isn't that here? Yes, and because you have to scheme to harm the property as well. There has to be harm that follows. And so what the Kansas Supreme Court said in Palmer was there might be lots of deceit and untoward behavior out there in the world. In fact, that's the problem. It's everywhere. But to cabin criminal fraud in any meaningful way, you have to cabin it to where there's actually injury that follows. And so the exact argument you make was made in –  The wrongfulness of the defendant's behavior in a criminal context is not injury, you're saying, for the purpose of the criminal law.  Exactly. That's what Palmer says. That's what the Arkansas Supreme Court said in Morgan. So let me give you those couple of examples, Justice Jackson. In Palmer, what happened is the defendant went in and lied about how his business worked and what his business was versus getting a loan. It induced the person to give the loan, but he put up proper collateral, and the Kansas Supreme Court said even though he lied to obtain money, not fraud. In the Arkansas Supreme Court case in Palmer, the defendant lied to the person wanting a hotel room and said your friend stayed here recently. Right, those are all fraudulent inducements in the sense that the lie is not about the service. It's not about – Justice Sotomayor brings up the example. This is a material term of the contract. The service that I want is a plumber who is certified or a plumber who is a DBE, for example, bringing it closer to this case. I don't understand why when someone schemes to get around that term, not only breaches it, but also then lies about having fulfilled it, that doesn't qualify as a material misrepresentation that triggers this statute. It could be material, but there's no economic harm or other property harm. What do you do about the donation cases? Fine. What do you do about charity? The government raises this in their brief. I am wanting to donate my money to a cancer charity, and I'm not receiving anything in return. I am giving the money away. When it turns out that the charity to which I donate has concocted an entire scheme to get me to give them the money, and they're not actually giving it to cancer patients, they have nothing to do with that, but they made all this up, and I give them the money, does that qualify for wire fraud in your view? There was no harm to me economically. Sure there was. You gave money and you got nothing in exchange. Oh, I got something in exchange. Well, I did get something in exchange, didn't I? No, I don't think so. I think there it's not very different than stealing. I mean, they just lied to you to take your money just like they took it against your will. Here there's an economic exchange, and, Justice Jackson, it cannot be that every material provision of this 1,100-page contract would give rise to a property fraud prosecution. Only the terms that deal with economic or other property interests can give rise, because otherwise this theory knows no bounds. There are all kinds of promises. Even if you want to keep it more cabined than the examples I'm giving you, look at the Second Circuit's more recent decision in Regents Supply, where there's aggressive salesmanship techniques. The person says things like, your friend referred you to me. He says things like, there's only so many left in our warehouse. All these things that might induce somebody to buy a product or take on a service that don't have any value. Just think of a babysitter. There's two babysitters on the block, and one says, I'm going to use the money I earn to take my sick brother out to dinner next week. And so that's why they pick babysitter A versus babysitter B. What about the family that says, it's very important to me to have a Christian babysitter. We are devout. We want this. This is a characteristic that we're telling everybody this is what we're looking for. And someone comes and they purport to have this characteristic, but they don't, ultimately. I think that's egregious behavior, but it's not property fraud. If the babysitter is otherwise fully qualified and performs the services. Now there may well be a very serious civil suit. If you're dealing with the government in that kind of situation, there can be a 1001 prosecution or maybe a 371 charge. So I'm not saying these things are okay, and I'm not saying the law doesn't provide a remedy. But what I am saying is that this is an age-old problem when it comes to fraud. Justice Story talked about it in his treatise. The Kansas Supreme Court talks about it in the Palmer case I've talked about, which is it is tempting to use criminal fraud to cover lots of forms of dishonesty or deceit. But the problem is you end up in a world where everything ends up being covered. And so you have to draw a line. I don't really understand the limits of your argument. So a party enters into a contract to get a particular good or service, and the party does not get the particular good or service that the party wants, but it gets something that's worth even more. Would you say that whenever that is the situation, there is no fraud? I think the answer is yes, with the possible proviso of the unique item situation. But I think that, Justice Alito, kind of brings the government's theory to light in an odd way, which is imagine somebody wants a Ford, and he gets delivered a Ferrari, and the government puts that person on the stand and says, gosh, it's like I hit the lottery. I got something ten times more valuable than the thing I wanted to buy. Under the government's theory, that is property fraud. And that seems like a very odd result. And the thing is there may be other situations where the thing you get is less valuable, and that's a classic situation as well. Whether that's a very odd result. Suppose I have two trees in my yard. One is an oak, and one's a weeping willow. And I hate the oak because I'm tired of raking up the acorns. So I hire somebody to cut down the oak tree. And when I come home from work that night, the oak tree is still standing, but the weeping willow is gone. And he says, well, the oak is a healthy tree. It's got deep roots. The willow has shallow roots, and any storm could knock it over and it could damage the house. Have I not been defrauded there? I didn't get what I wanted. I think you might have been harmed there with the property of your tree being taken away. I mean, I think that's just an odd hypothetical, but with a normal service, I don't think I could be. I could give you a million of them. I hire somebody to paint the dining room of my house. And when I come back, the dining room has not been painted, but the living room has been painted, and the living room is bigger. And he says, look, I gave you a bargain, same price, I paint it more, plus the living room really needed it more than the dining room. I think we're still in this difficult situation of there's actually your home is your property, and so some of the things that are happening to your property, but I think we're trying to get at Justice Alito. You get into a contract, and you think you're going to get, you pay for gold bars that are worth a million dollars, and instead you get lots of coal that's worth a million dollars. Have you been defrauded? So I don't think you've been defrauded under the property fraud statutes. You may have been defrauded if you were dealing with the government under Section 371, which doesn't have an injury requirement. But you really have totally not gotten what you wanted. I mean, you're created in a world where because I have a dollar's worth of loss, it falls within the statute. But rather than a dollar's worth of loss, I've gotten something that I have no use for, that I never wanted, that I made clear I never wanted or had use for. It happens to be the same in a marketplace out there, but it sure isn't the same for me. I think that this is a terrible deal that I've gotten, and it's not the one that I signed up for. So let me say a few important things about that. I mean, my core submission is that subjective disappointment when you get something different is not enough. But here's a couple things you could say about that. One is that is not this case. Here, in the Third Circuit's own understanding – It goes directly to your theory. Your theory is a dollar's worth of loss makes all the difference, as opposed to the government's theory is were you defrauded out of something that you thought you were going to get? Right. So I understand, Justice Kagan, that every legal rule is going to seem perhaps arbitrary at the margins. So if you want to tell me a dollar or a penny, I have to give you the answer yes, because that is loss. On the other hand, the problem with the government's theory, which is subjectively I didn't get what I want, is it has no limitations. So the coal versus the gold. What if they wanted gold from somebody who was producing it within local county and not from outside county lines? What if it was I want some coal from somebody who's a friend of the family? All those things you could characterize with wordplay as the same argument. I didn't get what I wanted. And the other thing about those hypotheticals, Justice Kagan, I understand they're – believe me, I've been through the moots – they're very hard and they seem odd, but it doesn't happen in the real world. The real frauds in the real world are when somebody's giving you something less valuable. That's the whole point of an ordinary property fraud. Mistakes happen in terms of the wrong item being delivered every day in the marketplace, but we don't ask ourselves whether there should be a fraud prosecution. We ask ourselves whether we can take it back to Amazon. I mean, these things happen, but unless there's actual less value involved in the alternative item or the parties have agreed to some premium for one thing versus the other, there's not really any reason for somebody to come up with a scheme to give somebody coal instead of gold. If the coal's worth the same amount, you could just sell it to somebody else who wants coal. Mr. Fisher, is the government's theory really unbounded? I don't – I mean, they don't quite advocate for a materiality requirement, but let's say materiality could be a limiting principle. Why doesn't that work? That means that every white lie is not going to count as something that would fraudulently induce you to enter into a contract. I guess white lie, you're right, Justice Barrett, but the test for materiality in the restatement, which is what the court looks to in Nader, is any important fact that induces somebody to enter in the transaction. And the babysitter hypothetical I gave you, imagine somebody's selling their house because one couple says they want to raise a family and somebody else says they don't and, oh, I want to support the block. There are numerous, and we cite so many in our brief, examples where that ordinary materiality requirement is met, which is, if I can just add one thing, which is why I think the government tries to monkey with the materiality requirement and ratchet it up, but for all the reasons we give in our brief, that just doesn't work either and creates more problems. Thank you, counsel. Does it matter at all to the limits of your theory whether or not there's an alternative avenue of relief, or is that irrelevant? I don't think strictly speaking it matters, but I think in almost all the difficult hypotheticals where we'd feel like somebody has been harmed or injured in a subjective way or just cheated, there'd be alternative remedies. So there's tort, contract, and that's what the court has said time and again in cases like Skilling and Kelly and so many others, look, the court should construe these statutes not to run roughshod over state, contract, and tort law, not to mention other remedies that are available. Do you recognize the availability of an alternative remedy in this case? Well, the government prosecuted these same clients under Section 1001, and so I think if they prove the elements of that offense, yes, they can procure a conviction. Thank you. Justice Thomas? In your research, have you found that there have been quite a few of these fraud cases in this context brought by the government? What do you mean by this context? Do you mean DBEs? Yes. I think there are some. I wouldn't say they're tremendously frequent, but there are others that are out there. So what distinguishes this case from the others? It would seem that with that many contracts, the broad use or wide use of these contracts, that you would have a history of some fraud litigation. Well, as I said, I think there are occasional breaches of these promises that give rise to prosecutions, but I think the thing that distinguishes these from legitimate prosecutions, Justice Thomas, is that there's no economic harm here. Remember, J96, the prosecutor said, this is a non-financial interest about our program. So just imagine all – Well, let me give you a different version, just to be clear about what your argument is. Let's say that someone, a company, says that we will bill your patio for a certain price, but every month we will give a patio to a veteran. And you make a decision to allow them to bill your patio with the understanding that they contribute every quarter or every month a patio to a veteran. And then you find out afterwards that they did not provide patios to veterans. Is that fraud? It's not property fraud, Justice Thomas. And the reason why is because the homeowners would not have been defrauded in their property interest. They wouldn't have suffered any property or economic loss in that transaction. So it's no different, Justice Thomas, than if somebody said, you know, my mother is sick and having cancer treatments, and I'm going to use these proceeds to help pay for those doctor's bills. Is there any amount of deceit that would amount to fraud if there's no property loss involved? No, and this is exactly the problem Justice Story talked about. It's exactly the problem the Kansas Supreme Court talks about in Palmer, is there can be extravagant lies and whopping tales that are told, and so it can be tempting to want to punish that person. But unless there's harm to the property interest involved, there's no case. Let me just make clear, you know, this is an 1,100-page contract, and what the Court has said time and again is mere regulatory interest cannot give rise to a property fraud prosecution. If the government is right, every regulatory interest written into a contract, imagine during COVID, somebody said, you know, we want you to perform this project, but you have to use masks when they're indoors. It's a very important, very important governmental interest right now these days. And the person didn't wear a mask indoors. That would give rise to a property fraud prosecution punishable by 20 years in prison, even though it was just a regulatory violation. Justice Sotomayor? Justice Kagan? Suppose the government has a program and it sets aside money for veterans, and somebody comes in and creates a whole set of lies to prove that he's a veteran, but he's not a veteran. Is that fraud? I think it is under the exchange I have with Justice Jackson, which is if you just take something for nothing, that's just stealing. Now, here what the Court is dealing with here is an exchange. Suppose that instead of setting up a benefits program of that kind, it's a contracting program that says, you know, we want to give these contracts of a particular kind to veterans, and somebody comes in and delivers the same set of lies in order now not to get just the assistance check, but to get the contract. Is that fraud too? So my answer there, and that's where I would draw the line, would be no if the person performs the full economic value of what was wanted in that project. And that's what Section 370... What's the difference, Mr. Fisher? You're going to tell me that one is fraud if, like, there's a benefits program for veterans, but the other is not fraud? If there's a contracting program for veterans, why should that matter? Because the common law made clear that there has to be harm to a property interest, and merely giving money and getting full economic value back is not harm to a property interest. And I think, Justice Kagan, that is very serious. Even though this whole program, if I may, has been set up in order to provide contracts to veterans, not in order to get the paint job of your dreams. That's right, and let me say two things. One is I think that's precisely why you have Section 371, which is defrauding the government in its programs and frustrating its programs is a crime punishable with five years in prison. That is a classic Section 371 case, and it's probably why we have that statute, because the property fraud statutes, the mail fraud statute, and the wire fraud statute don't cover that conduct as a matter of common law understanding of fraud. Justice Gorsuch? Mr. Fisher, it seems to me the tricky part of your case is that a common law in injury could be, if I didn't get a particular thing, the horse, even if I got something else of value. The tricky part for the government, though, is if there is no injury requirement and every material misrepresentation that results in no injury to anyone becomes a federal crime. And I want you to talk a little bit about that, your babysitter hypothetical, and the essence of the bargain, which language they try to put into the materiality requirement, which just seems to me benefit of the bargain, which seems to me an argument really that there is injury here because we contracted for a specific horse, a specific thing. What am I missing there? The injury needs to be to your property interest. So when you're dealing with money and you get full economic value back, at least as a general rule, there's no harm to that property interest. Now, we can set aside the unique item situation, and maybe I would just – I hope this is responsive. I want you to focus on the materiality argument that the government is pressing and how it may or may not smuggle in a benefit of the bargain injury requirement. Well, if I'm being honest, I don't quite know what the government's essence of the bargain test means. If you take it to mean what the restatement means, it's much more than materiality because what the restatement says is there are lots of things that are important inducements to enter into a transaction, and the restatement is clear. Those do not necessarily go to the essence. So the only thing that goes to the essence under the restatement is something that would destroy the value of the entire transaction. Applying that to this case, this whole transaction was about painting bridges and doing repairs with quality workmanship. How we used our proceeds doesn't remotely go to the essence of the bargain, so I don't quite know what the government is arguing when it talks about essence of the bargain. And I think, just as Gorsuch, I hope it's responsive to your question, let me just say one other thing, which is I understand this little corner of uniqueness is tricky, but the government has this much bigger problem. What the court's cases teach time and again is the federalism concerns and the over-criminalization concerns make this even more than an ordinary lenity situation. These statutes, as the court did in Skilling, they have to be cabined, otherwise they sweep in everything. Justice Kavanaugh? You encouraged us to focus on the real world, and I agree with that. The government says in the real world your position, however, would be, in their words, highly destabilizing. I want you to respond to that, and also in doing so, a question of, as you survey all the cases out there, is the government regularly prosecuting cases under this theory that you think cannot be prosecuted as you see the law? Well, Justice Kavanaugh, it's a little tricky because when the government makes those statements, there's very few citations in its brief, so I'm going to do my best, which is, as I said to Justice Thomas, my understanding is the government sometimes brings prosecutions like this for frustrating DBE requirements. There are other fraudulent inducement-type cases. The court's holding another one right now that get brought. It's not the predominant government theory in the property fraud statutes. Again, classic fraud, as I was explaining to Justice Kagan, involves somebody who schemes to take money and give something of less value. That's usually the whole point of a scheme, not to give something of equal value. And so I think it's an odd situation, but when you get into perhaps government officials that the government thinks are corrupt, you get into other programs that are important to the government. I don't deny that the DBE program is quite important to the government, just as a mask mandate might be very important to the government a few years ago, and other regulatory interests like the one in Kelly are very important to the government, and so sometimes the government does get sufficiently frustrated that it brings these cases. I don't think it's highly destabilizing to just lop off these things that are outside of ordinary understanding of common law fraud and still leave the government with Section 1001, Section 371, and any number of other civil remedies that private parties might have available to them in these situations where somebody is subjectively frustrated but not harmed in their property. Thank you. Justice Barrett? Mr. Fisher, I want to give you a chance to respond to the government's argument on page 47 of its brief. It says that even under your own pecuniary law theory, you lose because PennDOT paid more for the contract because it's more expensive to use DBEs, and so it did lose money. Do you have anything you want to say about that? Sure. I have two things. One is the government's waived that argument twice over. It didn't make it at trial, and it didn't even make it in the briefing opposition in this court, and there's a good reason why the government never made it earlier. In the Third Circuit, the government said, and I think I can quote from the government's brief here, we do not know whether PennDOT would have paid more for a contractor that used DBEs. So the government's theory in this case, and this is laid out at JA 96, was that this is a non-financial interest. It didn't have anything to do with dollars and cents. And so that's the theory the government ran in this case, not that we paid money and got something less valuable. But we paid, we got everything we wanted, and this brings me back to Justice Gorsuch's question. The prosecutor at closing said, this is like a frustration of a Buy America provision in a contract. That's exactly what the court has said isn't usually good enough. It doesn't satisfy the essence of the bargain, and it's certainly not financial in nature, but that's what the government said this case was like. Justice Jackson? So how do we square your argument with how the court has treated bank fraud cases? I understood, and as the government highlights, that the bank fraud statute we've said is modeled on the mail and wire fraud statute. And the court in Shaw, I think, looked at the very argument that you're making and held that bank fraud does not require ultimate financial loss or an intent to cause financial loss. And I thought very notably the court quoted Judge Learned Hand as saying, quote, a man is nonetheless cheated out of his property when he is induced to part with it by fraud, even if he gets a quid pro quo of equal value. So it seems that with respect to bank fraud, at least, we have rejected your theory, and we say the statutes are modeled after each other. So how do we reconcile this? I'm very glad you asked me this question because a lot of the government's brief hangs on Shaw and this related theory. You're right that the bank fraud statutes, at least in the states we're talking about today, are like the property fraud statutes. But Shaw poses no problem for us. All Shaw recognizes is that if the victim is later made whole by, like, insurance proceeds or a third party, or even if the defendant himself later pays the victim back, it's still fraud. It's still criminal fraud. Just like if you steal something from somebody's living room and then bring it back next week or you bring them back a new TV that you've stolen. All Shaw holds is that what the common law called the collateral source doctrine, which is the defendant's made whole some other way on the back end, doesn't cure the fraud. But what about the quid pro quo of equal value concept? Yeah, so I think understood in the context of that's the holding of Shaw, which poses no problem for us, and I'm going to get to that, but I think it might be helpful before the government stands up for me to say one other thing, which is the other thing the government quotes again and again is no harm has to occur in certain cases. All that means is that the property fraud statutes are an inchoate offense, which, again, we don't disagree. So now let me talk about quid pro quo of equal value. In the context of Shaw, I think all the court is saying when it uses that language is that what I just said, which is if you later get something that makes you whole, there's no problem. One final question. I guess I'm just trying to understand why this is all being funneled through the lens of injury to the plaintiff or not the plaintiff, injury to the victim in a situation like this. Again, this is a criminal statute. Is it your view that Congress cannot identify certain conduct related to property and money that it believes wrongful if you do it with a certain intent, create a scheme, and there not be any harm? I mean, there's no completed harm element here. I know you say you're supposed to intend for it to happen, but I don't understand why that's necessarily the case. That element is not in the text. So two reasons. One is, again, the word defraud is in the text, and that brings the soil of that element. And 100%, Justice Jackson, Congress can legislate to have the criminal law be broader, and it has in fact done so with honest services fraud. That is the one area in response to McNally that Congress has in fact extended the fraud statutes, and as Judge Sutton has said, and this court quoted for itself later from that opinion, that one singular extension actually is quite significant because it shows Congress that in this situation, we want it to be fraud but not in other situations. Thank you. So you had this whole argument, McNally, and Congress responded just with honest services fraud. Thank you, Counsel. Mr. Fagan. Thank you, Mr. Chief Justice, and may it please the Court. Petitioners are asking this Court to engraft a financial loss element onto the property fraud statutes that's nowhere to be found in their text, that this Court has rejected no fewer than three different times, not just in Shaw but in Laughran, in Carpenter, and frankly in Nieder too when it rejected a requirement of damages, and that would cut out paradigmatic frauds like charity fraud, co-religionist fraud, veterans' preference fraud, or basically any fraud that preys on a victim's idiosyncratic preferences. And I think the more that we hear about this theory, I think the more incoherent it becomes, and I think, I mean, frankly that's become clearer or less clear as the case may be this morning. So charity fraud. They acknowledge both here and in their reply brief that charity fraud is fraud, but the only misrepresentation in a charity fraud case just goes to a non-pecuniary aspect of the transaction. Then you have something like the Grover Cleveland fraud, which is an example drawn straight from the restatement, although it doesn't mention Grover Cleveland. And then we have a uniqueness exception that I don't think I saw in their briefs, and I'm not sure how far it extends. Does it extend to Monet versus Manet? I don't know. I don't know where that extends. And then let's take the plumber example. The whole point of the plumber example is I'm contracting, I'm paying the price for a certified plumber to fix my toilet. I guess they'd say it's not fraud if someone comes in and says, yeah, the toilet was fixed just fine, a certified plumber wouldn't have done any better, but that's not what I contracted for. I want the peace of mind of knowing that, like, I had a certified plumber or I wanted my preferred provider. That's straight from the restatement that Nieder cites as the materiality standard in this context. And then we have the you get coal instead of gold bars, which they concede wouldn't be fraud under their theory. I don't think this makes sense. I think the court should reject it. I'm sorry. What exactly was the harm to the government here? The harm to Pendiote, I mean, we actually had evidence in this case and we have maintained this theory. You can look at pages 11 to 12 of our brief and op and page 42 of our reply brief. There was harm in that they were willing to pay more for this regulatory program to be satisfied because they were required by the legal requirements to do it. They were actually willing to pay more for it. But in addition, your in addition, your honor, I mean, the government was harmed because it made very clear that this was a service. This was the type of service that it wanted to contract for and that it did not receive that particular service. It's the exact same theory that would be the case in veterans preference fraud. They contracted to have a veteran do this and someone lied and said they were a veteran. I believe they're saying that's out now unless it's under. I wasn't sure whether they were accepting the idea of a specific performance exception that Justice Gorsuch mentioned.  You say that the government was willing to pay more for DVS. Did you preserve that argument?  You can look at page 42 of our Court of Appeals brief. You can look at the closing argument. Mr. Mr. Fisher says that's not in the case. Why do you disagree? I disagree because we both presented evidence on it and preserved it. I mean, the court can the court is free to look at the record. So if that's the case, why are we here? I mean, if if if in fact there is an injury and it's economic, can't we resolve a case on that ground? I think the court could do that. And we urge the court to deny certiorari on that basis. So we really don't need to go beyond saying, well, if there is an injury requirement, it was satisfied here. Yes, we have made that argument. I mean, we introduced that section by citing the portion of the brief and off where we made that argument. I'm happy to point the court again. I mean, I still that's fine. That's fine. That answers my question completely. Did you agree that a common law fraud completed fraud required injury? It depends what you mean by injury, Your Honor. I think they get a lot of mileage out of confusion in the cases about what phrases like harm, injury and loss mean. I mean, I agree that it requires harm in the sense that you have to obtain the victim's property. But here that's satisfied. They got tens of millions of dollars of Penn DOT's money. So in that sense, yes.  I do not agree that the common law required the kind of net financial loss that they have here. First of all, I think that's essentially they essentially concede, and this is at page 9. Not net loss, but that there's some deprivation of property, some damages? No, Your Honor. There didn't have to be damages, as we point out, particularly for the rescission remedy. And on page 9 of their reply brief, they acknowledge that the common law was established in our favor at least by 1952. And Pasquantino, page 360 of that opinion, tells us that 1952 is the relevant date for wire fraud. Mr. Fagan. I'm sorry. I just wanted to ask you, kind of following up Justice Gorsuch's asking whether we could decide the case on a narrower theory. And I wanted to return to, kind of related to that, I wanted to return to, you know, Justice Kavanaugh asked about whether this would destabilize the law. He asked Mr. Fisher that question. Justice Thomas asked how many of these prosecutions are there on this DBE theory. How often does the government, it doesn't have to be just DBEs, but how often does the government bring prosecutions that might fit this kind of category? Is this an outlier or is this something common? I can't give you a precise number, Justice Barrett. I mean, I think in a lot of cases, we also would be able to show some kind of economic loss of the sort that we're supposing. But we definitely prosecute cases of charity fraud. We definitely prosecute cases of veterans fraud. And there are other types of fraud that we prosecute under this theory. Well, if you can't give a number, how can it be highly destabilizing? Well, one reason I think it would be very highly destabilizing, to get back to what I was just saying, is I don't really understand the limits of this theory that they're espousing. It's one the courts rejected numerous times. And I don't even understand where it's coming from. I guess, although all they objected to below was the property element, I take them today to be locating it in the defraud element. But, of course, in Shaw, the court rejected the idea that intent to defraud requires intent to cause financial loss. But just taking it on its own terms, I mean, I guess they appear to draw this from the common law. But they concede the common law was established in our favor by 1952. And I think it was well established long before then. And if you look at the Story Treatise from 1870, at section 203E, page 207 of the 1870 Story Treatise, Story says that you're entitled to a rescission remedy if either you pay a higher price or you were tricked into making an exchange that you otherwise wouldn't. I'm sorry, why don't you finish your thought. I'm sorry. And that's exactly the case here. It's the same for false pretenses. If you look at the 1865 version of the Bishop Treatise that we cite in our brief, we cite the 1883 version. It cites the horse cases and points out exactly our role. I'm sorry. No, no, no. It seems to me this case has a lot of the air of a pot calling the kettle black. I mean, if we took the phrase, there are no limits to the theory, I don't know which side would have more statements like that. But there would certainly be a lot in either one. So I'll ask you the same question that was asked of Mr. Fisher. What is the limits to your theory? And that's a big part of the argument on the other side, that you're taking every, however minor. Okay, let's say it says, you can get as many hypotheticals as you want. The contract says, and all the documents shall be printed on 8 1⁄2 by 11 paper. And you get three of them that happen to have 8 1⁄2 by 13 paper. Can you bring that prosecution? Maybe you wouldn't normally, but you may well have reasons that you don't like what happens. So you're looking for anything you can get your hands on to throw it out or get some disabling aspect to it. And if it's 1,100 pages, there are going to be a lot of things in there that they didn't dot every I or cross every T. So what are the limits to your theory? Well, Your Honor, there are other limits in the statute that we may get to later. But the principal way that this has been dealt with, and the way this court dealt with it quite recently in Universal Health Services, where it begins the discussion with the NEDHR standard, is through materiality. And the court makes clear in NEDHR, sorry, in Universal Health Services, that this exact problem, there in the context of conditions on payment, but I think equally translatable to other types of contract conditions. The court makes clear that the standard's the same in criminal law, tort law, contract law, and that that standard is familiar and rigorous, and that the standard excludes these kinds of sort of, you know, you might call them ticky-tack things, unless, and this is footnote 5 of NEDHR where it cites the restatement, there is a subjective preference that this particular victim happens to have, of which the defendant has constructive knowledge. What about the point that a lot of these things could be dealt with under state law, and you don't have to federalize every jot and tittle in a large contract, and that it's a matter of concern that we've expressed in many precedents that the federalization of something as simple as nuances of contract law is a very serious matter? Well, let me emphasize again that this would not, for the same reasons as in universal health that the court explained there, federalize every jot and tittle of a contract. And I can explain why this is a very different case from what you're supposing, Your Honor. But just to take your question on directly, I take the instinct, and let me say a couple of things about it. Number one, I think it's always been a supporting rationale, not a freestanding reason just to impose a limit in the statutes. For example, small-bore private frauds, the Justice Manual advises prosecutors not to bring those types of prosecutions, but I don't think you'd say, and this goes to my friend's colloquy with Justice Kagan, I don't think anyone would say that that's a justification for writing such an exception actually into the statute. And by the same token here, I don't think there's a reason why, just a freestanding reason why to do that. Congress wrote these statutes because it wanted to criminalize frauds when they used the mails and the wires, and that's what we have here. As I was just explaining, this is a very traditional theory of fraud. I think it's common ground that it's at least been the law of fraud for the 72 years that the — Mr. Fagan, I'm sorry to interrupt, but I just want to circle back to the Chief Justice's first question, and materiality has never been that high of a bar. You seem to be trying to make it a little higher here by really importing, it seems to me, the benefit of the bargain idea with respect to individual items that can sometimes give rise to injury, even when you're given a thing of equal value, the horse example, the painting example. On your theory, though, of materiality, if materiality is the only thing required, what about the babysitter who says, I'm going to, and it's in the briefs, take the money that you give me for college, and therefore I hire her. She provides excellent babysitting services and proceeds to blow the money on a trip to Cancun. Is that mail fraud? I mean, could that be prosecuted as mail fraud because I had some subjective wish that she use it for one purpose rather than another, even without any economic injury to me? Well, Your Honor, I don't think some subjective wish counts. So if we look at footnote 5 in Nieder, it has to be a subjective preference about which the victim had constructive knowledge. Spot on that. We got that here. So, Your Honor, if the hypothetical babysitter says, like, knows that this couple is choosing between babysitters, Material misrepresentation. considers it a form of charity, essentially, that we choose this babysitter over this babysitter. She knows that or he knows that, and he lies about it. And that's why they're planning the babysitter.  And there's involvement of those. I think the answer you're reluctantly getting to is yes. No, I'm just pointing, this is the exact same theory, Your Honor. Now, I would acknowledge, I would acknowledge if I had paid more for the babysitter who's using her money for good things, rather than the babysitter secretly planning a trip to Cancun, that might be, I might have been injured. But on your theory, that's not required. So, Your Honor, let me just say a couple of things about that. That's federal mail fraud. I think that's exactly the same theory as charity fraud. I think it's exactly the same theory as if there's a misrepresentation about a criminal background and turns out to have been a serial child abuser. I think you could imagine... Well, in those circumstances, I might have paid more. And if I can prove that, I've certainly been injured. But you would have us say that doesn't matter, so long as the victim's aware of the subjective wishes that that is mail fraud. Sorry, Your Honor. You might have paid more, but maybe not. So this is an actual case from the Tenth Circuit, a case called Richter, where there's a company that represents that it's going to dispose of your electronics in some kind of environmentally sound way, rather than simply to dispose of them overseas, as other companies do. And they charge about the same rates as other companies. And people say, oh, this is a great deal. And it turns out they're taking them overseas, too. Or to make this a little bit more like the babysitter example, you could imagine a babysitting company doing this sort of thing on a systematic basis. Or take an actual company. They're not doing what I'm about to hypothesize they do. I take your point. I think Justice Kagan had another point. I'm sorry. Well, it really comes off of Justice Gorsuch's example. And he beat me to the punch a little bit. Because he said, you know, if this exact same lie, I'm going to use the money I make, this babysitter says, in order to go to college, on the one hand, that gets her the job. On the other hand, it gets her the job plus 25 cents more an hour. The question is whether that should be the difference between wire mail fraud and not. Now, hopefully the wire mail fraud statutes are not being used to prosecute the babysitter regardless. But what sense would it make? If I understand Mr. Fisher's theory, it makes all the difference between somebody saying, you know, this is such a wonderful person. She's using this to go to college. They give her the job on that basis. But because they also say we'll throw in an extra five bucks, that that's what's going to make the difference between fraud and not. That's not necessary, Your Honor. I mean, this is the exact same theory as in veterans preference fraud. If you're paying the same amount but you really want a veteran to do it, it's the exact same. Your Honor, I know, like, there's always an instinct to want the advocate to give up these hypotheticals. But that is the exact theory of charity fraud, veterans fraud, co-religionist fraud. I hire somebody to build my pews and it turns out they're a Nazi. There are every, that is our basic theory of fraud. But it's not required. And, in fact, Universal Health Services uses an example, one of the examples of a common law fraud case that they cite, involves employment fraud where somebody misrepresents their qualifications on their resume, says they were retired, and it turns out they were actually in jail during that period. Mr. Fisher has said a lot of these cases use the language of harm, use the language of injury. I mean, some of them do, some of them don't. They're a little bit all over the map as far as I understand them. But there are definitely some that use that language. What do you take them to be referring to? Or what's the range of things that they might be referring to? In other words, some of them are using them one way. Some of them might be using them another way. So, Justice Kagan, let me make very clear just a couple of points before I address your question. They're very quick. Number one is the court made clear in Pasquantino and also in Nieder that the burden's on them to show the common law, and they have to show a well-established common law rule. The second thing I'd tell you, and this goes straight to your question, is we're not claiming every single case has to be read our way. We acknowledge, for example, we cite the Lefebvre Treatise that points out that the law on false pretenses was more in our direction, but that there were some other cases about this. And then the third thing I would say is a lot of these cases do talk about loss and harm in terms of just actually not getting what you want, like getting the coal instead of getting the gold would be the loss or harm. If you want to see a more close-in-time-type discussion of that, there's the Washington Supreme Court opinion in Rudebeck that we cite in our brief, and I don't think they really have a response to that. In fact, there are a number of sources, contemporaneous sources, that they don't respond to in our brief. I mean, for the common law, I'm content to let the court either look at it for itself, or I'd encourage the court to line up our sources versus theirs and see what they're not able to respond to in their reply brief. And, again, finding a couple of outlier cases or a couple of cases like the ones that Mr. Fisher has focused on this morning, that I could talk about specifically, but even spotting him that those favor his rule, just a couple of cases lined up against all the treatises, you know, Story, Bishop. This court cites Bishop for all sorts of things all the time. Counselor, the fraudulent inducement cases are difficult. There's the babysitter one. One doesn't think of the contract as including what the person's going to do with the money later, but presumably if I am a parent and I really want them to spend the money on college, I could make it a part of the contract, couldn't I, explicitly? Yes, you could, Your Honor, make it explicit in the contract. Now, this is not fraudulent inducement in the sense of those examples of my reasons for entering the contract. The use of the DBEs was part of the contract, correct? Written part of the contract. Yes, Your Honor, and let me be clear that it's neither a necessary nor a sufficient condition for it to be part of the contract. This goes back to my discussion with the Chief Justice. On the materiality. On materiality. You could have lots of things in a contract. This came up exactly in universal health services. Even if they're specified as important or material or conditions of payment that aren't such because they're either not, it's either not reasonable, this is under the standard that NEDR employs, it's in footnote five of NEDR, because either a reasonable person wouldn't attach importance to it or there isn't the kind of subjective importance that the victim had reason to know about. You're getting to the point that this is a much narrower case than the broader fraudulent inducement cases, correct? It's narrower than a case where there's like 7,000 requirements and they're all material and in theory we're trying to prosecute for one. I'm not sure we can do that unless it were obviously an important one. But it's not a condition of the contract that's not specified in the contract. It is not only specified here in the contract. Counselor, just answer my question. This is not the case of the babysitter. That is absolutely correct, Your Honor. Thank you. Why are you fighting me so hard? I apologize for giving the impression I was trying to fight you. I was going to amp up your point. When you were answering or discussing this issue with Justice Gorsuch, he said, I think your answer is yes, ultimately, but you never actually said yes. Was your answer yes? Yes, Your Honor. I will accept that under the theory that we have, which is necessary to get charity fraud, veterans fraud, co-religionist fraud. I got the reasons. I just wanted to make sure. I'll accept that if the mails and wires were used and all the elements of the statute were satisfied, yep, that would be wire fraud. I think the sentencing guidelines would be pretty low. And then on materiality, which you emphasize as being the critical limit here, what should the jury instruction look like there? What is the standard jury instruction there? Because you refer to essence of the bargain, which I think is probably not giving a huge amount of guidance. So, Your Honor, I don't think there's a one-size-fits-all approach to this. And let me just get the difficult part out first. They've identified a couple of instances in their brief where the government opposed an essence of the bargain instruction. The government should not be doing that. And we've filed a corrective letter in one case, and the other case is post-verdict, and we intend to confess error in that case as well. So essence, I think in footnote 5 of universal health services, the court offers just a number of different formulations, some of which might be useful in certain cases, some of which might not. I don't think it's error just to use the standard materiality instruction because, of course, that's what universal health services is interpreting. But something like essence of the bargain or what was done in this case, I think it's page 98 to 99 of the joint appendix, you have fundamental basis of the bargain, that might be another way to put it. I think what's important is that the jury gets the idea of the actual materiality standard, like that really the government's, if it's not something to which a reasonable person would attach importance, like the size of the paper, Mr. Chief Justice, then we're not going to be able to satisfy that. And then I think you're really going to have to show, and the burden's always on us to show, this is even beyond universal health services, which brings us up in a civil context. It's a concern, or one concern, and I don't think there's a great solution to this, but I'll just throw it out there, is that obviously it's pretty vague, and different juries are going to have very different reactions to something like essence of the bargain. But I don't know that there's a great solution to that. That's why I was asking the question about how it's spelled out. So, Your Honor, I think courts have a lot of experience crafting proper jury instructions. This is exactly what they have to do under universal health services. Unlike universal health services, we have to prove this beyond a reasonable doubt, and I think any kind of reasonable explanation, and again, this has been the law for a long time, a long time. So there's a lot of experience with this, but I think any explanation that the court comes up with that's a reasonable explanation of the concept of this has to be something that was really important, like here, where the contracts only occupy seven pages of the JA, which are smaller pages, Mr. Chief Justice, than 8 1⁄2 by 11, only occupy seven pages of the JA. They only have 17 warranties, and this is the only one designated as material that's going to be easier to prove. One other thing I'd say about materiality is, of course, net pecuniary loss or the lack thereof is something that could be a factor in whether something is material. People care more if they're losing money. They care less if they are not losing money as a general matter. There are cases, and the restatement recognizes this, NIDA recognizes this, the law has always recognized this, the uniqueness exception recognizes this, if there is such an exception, rather than that just being the general rule, that there are cases where someone has a subjective preference that may even cut against their economic interest. I would like to pay more. There are going to be cases, and this goes back to my discussion with Justice Gorsuch, there are going to be cases where I'm willing to pay more for something that somebody else thinks is valueless. Mr. Fagan, do you understand, I just want to be sure that I have the nub of your argument on essence of the bargain, do you understand that to be ratcheted up for materiality or synonym for materiality? I understand it to be a way of expressing materiality that is useful in the contracting context, Your Honor, and what it expresses is this idea that it has to be a but-for reason why the contract was entered into, and that you have to show it's either something reasonable... But is that more than materiality, and does it, well, two questions, I mean, is that, I mean, Mr. Fisher said that essence of the bargain is an effort to ratchet it up, so do you agree or disagree? I don't agree, because if you look at Universal Health Services, like, it's just, it's a three-page discussion, but it's clearly equating these things as synonymous. I think it's a context-specific application, and the thing that you're getting, the essence of the materiality here is whether or not it's going to influence the person to enter the contract. Does this idea, essence of the bargain, have any grounding in the common law of fraud? Well, Your Honor, yes. I mean, where the essence of the bargain standard comes from is a citation to Story, I believe, who mentioned essence of the bargain. I think the court, but that's not, I wouldn't get, I mean, that's the formulation that we've found most useful, but I think, as I was explaining to Justice Kavanaugh, in footnote five of Universal Health Services, and my apologies if I'm misremembering that that comes from Justice Story, obviously that's an objective fact you could check, but there are a number of different formulations, which I think show that the common law has kind of incorporated this requirement, but it's the basic materiality, it is the basic materiality standard, but is applied in this context. If you're going to talk about something that, these kinds of very small-bore things that aren't obviously important to any reasonable person, there's going to have to be some evidence of, like, enforcement. We rejected contracts for failure to do this. We have that kind of evidence here, and that the government's really going to have to prove up its case, particularly in the context of a criminal prosecution where the proof is required to be beyond a reasonable doubt. I mean, I think the other things I'd emphasize are that this just, the requirement they're trying to impose, well, I ran out of time, so there you go. But we have it. Justice Thomas? Justice Alito? On the question whether we could affirm the decision of the Third Circuit on the ground that PennDOT actually paid more here because of the DTE requirement, did the jury instructions say that proof of that was essential? The jury instructions didn't say that proof of that was essential, no, Your Honor. They permitted conviction without proof of that? I believe the jury could have found on either theory. I think this would be essentially a harmless error argument. Right. It would be a harmless error argument, so we would have to find that it was harmless or send it back. Well, we couldn't reach the issue of whether it was harmless unless we accepted Mr. Fisher's general theory, right? Because otherwise there would be no error. I mean, I think the Court could potentially assume error and remand for harmlessness. But I would urge the Court not to do this. There's going to be some other case. There have been other cases raising this question. You know, I don't know why this is necessarily the – obviously you all would know more than I do about why this is the one that the Court selected. So I don't want to have a Marshall McLuhan moment here. But if the Court thought that this case best presented the question, I would urge the Court just to decide it or it's going to keep being an argument that is being raised. Well, I'm going to ask you a question that I really would like to ask Mr. Fisher, but I can't ask Mr. Fisher any more arguments. So perhaps if I ask you, he will cease it to address it. Would you like me to answer it as him or as me? Whichever you want. Assuming his persona and answering for him might be a – That might be fraud, Your Honor. I'm sure not good. It might be a frilly moment for you, but what do you understand to be his argument about the exception to the general net benefit rule for the situation in which the thing that's involved is something unique? I mean, I don't really understand it because I took this to be the general rule. Again, the grandfather example minus Grover Cleveland is drawn straight from the restatement. I don't really – I'm not quite sure what's unique. We've got a Jets-Giants riff on that in our brief where you want Giants tickets and you get Jets tickets. I mean, is that unique? Equal. Well, particularly with – I'm really – I'm not sure. It at least encompasses, like I would take him to be saying, it at least encompasses something unique like my grandfather. But I don't know how far it extends beyond that, and I don't really think it was an exception. I think it was the rule. So I'm trying to wear his hat and mine, but he may be better able to address that on rebuttal. Let me ask you about the argument that I think is kind of hanging over this case like a cloud or a fog, and that is the suggestion that when you take a line of cases that the court has handed down in recent years, all of which I think I have joined, Skilling and Simonelli and Kelly and maybe you could throw in McDonald and maybe there are a few others, what they really stand for is that the court really doesn't like the federalization of white-collar prosecutions and wants that to be done in state court and is really hostile to this whole enterprise. Well, can I just say two things about that? So those decisions under this fog don't have so much to do with the language of the particular statute or the particular situation that was presented by those cases. It's just this general attitude, and the petitioner here wants to take advantage of that attitude. Well, two things about that, Your Honor. One, as I said earlier, I mean, I take the sentiment, but I don't think it's a reason. I think it's always been a supporting reason. I don't think it's a freestanding reason to carve an exception into the statute. Number two, this is an exception or a new element that the court has already refused to create. Carpenter rejected a requirement of monetary loss. Nieder rejected a requirement of damages. Lofgren rejected a requirement of risk of financial loss. And then Shaw rejected a requirement of either ultimate financial loss or intent to cause financial loss. I think that pretty much settles this question. The court can resolve this case on that line of cases rather than the kind of more amorphous sentiment expressed by some of the others. And I don't think this court wants to send a signal to the lower court that it's okay to start making things up in a statute because we disagree with Congress's policy choices about how broad to write the fraud statutes. It wrote them broadly because frauds are very inventive. There are any number of ways you can defraud people, and the federal government had a separate sovereign interest in that when they implicate the males and the liars. Would you agree that in the end this turns on our understanding of the common law of fraud? No. I think they have to have a well-established rule, and we only look to that if the text is unclear. If you just want to look at the text of the statute, you've got words like false representations, false promises. This is one of these cases where it's very difficult to tell what element we don't meet, and they're trying to incorporate a very counterintuitive definition of fraud. I think anyone who receives the bag of coal rather than the bag of gold is going to feel like they were defrauded, as in a number of the other examples that have come up. And in order to cut against that, I mean, I don't even think the court needs to get to the common law, and if it did, it's got to be well-established, and it certainly wasn't. By 1952, even they acknowledged that. Thank you. Justice Sotomayor? I thought that the only thing you wanted us to do was to say that we reject petitioners' net pecuniary loss requirement. Correct? Yes, we want you to... But do you want us to go further? When you're responding to Justice Alito, what more do you want us to say? I don't need the court to say... I mean, I'm not asking the court to say anything more than to reject petitioners' theory in this case and affirm the prosecution, or affirm the conviction. Justice Kagan? Justice Gorsuch? Justice Barrett? Just one question. Picking up on Justice Alito, you know, talking about the line of cases that we've had recently, I mean, it seems to me another theme in Mr. Fisher's brief, and that kind of what makes it a little bit hard for you, is to say, like, what is the point of Simonelli? What is the point of these other cases if the government can just get around it through this theory? Okay, so I think if you'd like a full answer to that, I think I could walk through the actual case. You don't have to give a full answer at this point. We were very up front about this in Simonelli, that this was the theory we were running, and the court remanded for its more traditional theory, its words, traditional theory of property fraud. So I think, you know, we were very up front about that. And in cases like McNally and Skilling, the court has always reserved the question of whether some kind of property fraud prosecution could be brought. And just to preemptively address what he's about to say, I don't think this would cover Skilling or McNally, because I don't think their object was property in the hands of their employer by concealing their conflicts of interest. The property that McNally wanted was the property that was the kickbacks, which were coming from the person receiving the government contracts. So it was their money that they were kicking back to McNally. That's why he wanted to keep his job. And in Skilling, he wanted to keep doing his stock fraud. So I'm not really sure that this would cover either of those cases. Justice Jackson? Isn't Nader and the old soil concept really relying on assumptions about congressional intent? It has to be well settled, because I thought the logic was if these are well settled common law concepts, then when Congress uses the language in a statute, they intended to incorporate that concept. Yeah, I think that is a background presumption this court often employs. But here, I mean, I think that cuts clearly in our favor, both on the 1952 point, and if we want to look just at the mail fraud statute, one easy thing to look at is, I think even they concede, and this is in the McCleary article in their reply brief, that this is getting well established, at least on their view, we think it was earlier, but at least shortly after 1872. And in 1909, Congress amended the mail fraud statute to codify this court's decision in Durland, which makes quite clear that fraudulent inducement type circumstances are covered. And if the law, on our point, was getting more clearly established by that time, I think that destroys any ability they'd have to show that it was well established in the mail fraud statute, let alone by 1952. Thank you. Thank you, counsel. Rebuttal, Mr. Fisher? Thank you. I have five points I hope I can get through. First, the question here is whether the product or service that was bargained for in a particular manner, there was assigned a premium to doing it in a particular way. It's not whether the victim subjectively would have paid more. But even on that basis, Justice Gorsuch, you asked a lot about this. I'd refer the Court, first of all, to the brief in opposition. I don't see that argument anywhere. Second of all, in the joint appendix, the prosecutor says this obligation was non-financial in nature. It was not about dollars and cents. In the Third Circuit, here's what the government told the Court. We do not know whether PENDA would have been willing to pay more for these same repairs. And there's also potentially equal protection implications to the notion that it would pay more simply for DBE participation. So this is the babysitter case. This is the case where the defendant made a promise to use the proceeds in a particular way that was frustrated, and it was non-financial in nature. Second of all, Mr. Fagan talks about the common law, and he talks about it as of 1952. What the Court has said is that the mail and wire fraud statutes are the same. The mail fraud statute was enacted in 1872, so the question is about 1872. Even in 1952, all Mr. Fagan has is rescission law. That's equitable law under contract. Even then, the common law remained as a matter of deceit for tort principles and false pretenses for criminal law principles, that you needed injury and harm to a property interest, and that was the common law all the way through in it. And I would just refer the Court back to our briefs. The government cites lots of quotes out of cases and treatises, and I, just like Mr. Fagan, encourage the Court to look back at those. What you'll find is all they say things like, if somebody else, a third party, covers the loss, that's not fraud, or the fraud doesn't have to be completed, it's about the scheme as devised if it were completed. That's all those things say, and that's all that Shaw says. As to materiality, I don't mean to be difficult here, but I am truly baffled at the government's argument about materiality. Universal Health, which Mr. Fagan refers to again and again, says something that does not meet the essence of the bargain standard is a Buy America guarantee. If you look at page 96 of the JA, where the prosecutor explains how the DBE requirement worked in this case, they say it's exactly like a Buy America guarantee. So I don't understand how you put those two things together, and Justice Kagan, I'm sorry, Justice Barrett, you asked about the common law. Look at the restatement. The restatement is crystal clear that essence of the bargain is higher than regular materiality, and Justice Story doesn't say anything to the contrary, and we cite that in our reply brief. Justice Alito, you asked about the uniqueness exception. My rule is about whether the victim got something of less market value. And so the only possible exception is for uniqueness, where market value is so subjective in that context, you might say that's different. That's the Horse Called Charlie case, and even that case, in the Maine Judicial Court, said we don't lay down any general rule, this is a special case. So if there's a special case, it's not the rule, it's the exception. And then finally, there were several questions about this, you know, what it would do to the court's old cases. It's not just Simonelli that would come out the other way, and McNally, the prosecutor, and Justice Stevens noted this in dissent. The prosecution could have just said they hired a person that would conduct his services honestly, and that's the kind of employee they wanted, not somebody else, and when they paid him that money for his services, they were defrauded. That theory would have been available. And then skilling on the facts of skilling, it wouldn't come out the other way, but the city manager hypothetical that Justice Ginsburg describes as classic fraud would be fully chargeable under the government's theory. So you have this odd situation where the government is here today saying, look, for 40 years we ran a bunch of different theories. We created honest services. We created right to control. We've concocted one theory after the other, and now it turns out, oh, we were wrong. It's so easy. All we have to do is this property law, this theory. And Justice Kagan, you asked this at Seminelli. Like, why not just say the property, the money under the contract is the harm? Well, there's a really good reason. It's because the common law was clear that wasn't enough, and all the sources we cite say that's not enough. The court in Durland in its early cases where it said, here's what the ordinary meaning of fraud is, it's harm to a property interest. There has to be loss. And so when you understand that and you look at cases like the Kansas Supreme Court case in Palmer, the Arkansas Supreme Court case in Morgan, there aren't a ton of cases like this because the government didn't actually charge this back in the old days. But when they did, they were rejected except for in the house card trial situation. Otherwise, it was rejected. And the court's own case is rejected. And so all the government is doing is trying to basically throw up its hands and say, all of our other theories we tried haven't worked. Now we're going to give you this last-gap effort of denying the reason we created those whole theories in the first place, which is that the common law requires harm to a property interest. And that understanding, and, Justice Jackson, this brings me to your question, that understanding is baked in the statute. We don't think we have to meet the meter test like for materiality where you're just inventing an element that isn't in the statute. The word defraud is there. And so we have the better reading just under ordinary principles. But even if we had to satisfy meter, we could. Thank you, counsel. The case is submitted.